Case number 13-5263, Malla Pollack, Appellant v. James C. Duff, Director of the Administrative Office of the United States Courts, in his official capacity at Elm. Ms. Pollack for the Appellant, Mr. Interante for the Appellant. May it please the Court, Malla Pollack arguing pro se, I reserve two minutes for rebuttal. The facts, to the extent that any have been developed in this case, are very simple, Your Honors. While living in the Commonwealth of Kentucky, I sent in a number of applications to the federal government for employment positions in the District of Columbia area. Two of these were sent to the Administrative Office of the U.S. Court System, the AOC, were immediately rejected on the sole ground that I was, at the time I applied, a resident of the Commonwealth of Kentucky and not of the D.C. metropolitan area. I attempted to use the AOC's administrative review procedure and was told that that procedure simply had nothing to do with my claim I couldn't use it. Therefore, I filed a lawsuit. The only claim I've ever raised in this lawsuit is that the AOC's actions violated the constitutional right to interstate travel, which is a fundamental right. There are two issues in the case. One is, does the right of interstate travel exist against the federal government? The second is, if it does exist, has the AOC burdened the right? I'd like to get to the second point first because it's the simplest one. The Supreme Court has decided, in the 70s and the 80s, four employment cases. In each of these four employment cases, two of which had to do specifically with legal jobs, and this is not included in the Fraser case, the Supreme Court held that the right for a non-resident of a state to apply for a job was a fundamental right under the Privileges and Immunities Clause. It recognized that it had been so listed, going all the way back to when Justice Bushrod Washington first completed the list that we began with. And furthermore, that the burden which violates this right and therefore requires the government to justify its actions is mere lack of substantial equality. Those are the words the Supreme Court used in both the Piper and the Friedman case. Lack of substantial equality of access to the jobs. Though we don't know, because the record has never been completed, how many jobs and what percentage of jobs the AOC does this in, certainly the fact that there are any jobs whatsoever. Ms. Polk, the district court said, I'm quoting, the AO has not made it more difficult for a plaintiff to travel to D.C. Simply said she can't apply for a job until she does so. Yes, Your Honor. Why isn't that dispositive of this case? It doesn't, why isn't the district court absolutely right? There's no limit on your ability to travel to D.C. Yes, Your Honor, but the right to move across state lines, the right to go temporarily or permanently by getting a job, that by itself has been accepted by the Supreme Court in four cases as a violation of the interstate right of travel, a fundamental right which, at least for the states, is covered by the Privileges and Immunities Clause. The cases are Hickler v. Orbeck, the Alaska hired case. United Construction, I forget the full name of the union, v. Camden. Supreme Court of New Hampshire v. Piper and Supreme Court of New Hampshire, I'm sorry, and Supreme Court of Virginia v. Friedman. What about McCarthy v. Philadelphia? That only had to do with the right to require someone to live locally while employed, which is completely different. The Supreme Court made that clear in that case. May I read you a sentence from the case? Certainly. The court said that it had never, quote, No, sir, that's not exactly what it said. It said, well, when I say questioned, they hadn't ruled on that. But McCarthy didn't include that. And in the Camden case, the Supreme Court made clear that that was a major issue, and then that violated the Privileges and Immunities Clause unless Camden should show a sufficient burden. And since the case then vanished from the court docket, I don't really know how that came out in reality. But these are four Supreme Court cases saying this, and the concept that this is a fundamental right has been accepted by the Supreme Court since, as I said, Justice Bushrod Washington first created a list back in 1825. And if the right does exist against the Federal Government, then this is a violation. In the Friedman case, the question was whether it was a violation of this fundamental right for the Supreme Court of Virginia to not allow nonresident lawyers to wade into the Virginia Bar. There was no doubt the Commonwealth of Virginia freely allowed nonresident attorneys to join the Virginia State Bar. But unlike residents of Virginia, they always had to take the bar exam. And that by itself was held a violation of the fundamental right into state travel in this fashion, which was against the state's part of the Privileges and Immunities Clause of Article II. And what was the last time that the right to travel was applied against the Federal Government? It hasn't been. There are a number of cases, which have been raised in the papers by the AOC and the trial court, where Federal courts have said in dicta and without any analysis whatsoever that the Privileges and Immunities Clause does not apply against the Federal Government. However, there are two problems with this. First is the only piece of information anyone so far has been able to unearth about what the ratification-era population thought it meant was a statement by James Urdell, one of the first justices of the U.S. Supreme Court and the leading Federalist in North Carolina. He said quite clearly that the Privileges and Immunities Clause of Article II is a limit on the Federal Government. He used that in a reply to an objection made by George Mason to the Constitution's being ratified. Furthermore, there's dicta, and it is dicta. I mean, all of this is dicta. Nobody has a case directly on point. There's strong dicta from the Supreme Court going back to Crandall v. Nevada, where the Supreme Court pulled out of its tool case as an axiom to get around what was then a difficult Federalism question, the concept that obviously from the structure of the Constitution, no specific language, so if the Privileges and Immunities Clause is limited, it doesn't deal with Crandall v. Nevada, that every citizen has the right to come to the seat of the Federal Government, in other words, Washington, D.C., for a number of purposes, one of which was, or rather two of which were, jobs, to share its offices, to engage in administering its functions. This, of course, is not a right to be hired, but it certainly is a right to be considered whether you will be hired, so that whatever the limits of the right to travel, which is a horrible thing to name because it's not always about traveling, to operate across borders rather than have a balkanized set of states or jurisdictions, whatever that right is against the Federal Government if it exists at all, the right is to go to D.C. to try to work for the government, which is what I wanted to do. Furthermore, the only case where it actually came up where it could have been a holding was Frazier v. He, in the Fifth Circuit, where someone appealed the local rule of the Eastern District of Louisiana Federal Court, which refused to allow people who had neither a residence nor an office inside Louisiana to join that bar. The Fifth Circuit said, and here it was a holding, that the Privileges and Immunities Clause of Article 4 did not bind the Federal Government, but gave no reason for it, just said it, which is the way all these cases are going. And the Supreme Court reversed. Now, it chose, of course, not to reach the constitutional issue because it didn't have to. Instead, it used its supervisory power. If you have no further questions, Your Honors, I'll save my last few seconds for my rebuttal. Thank you. Thank you, Your Honors. Good morning. May it please the Court, John Insurante for the Administrative Office of the United States Courts. This Court should affirm the District Court's grant of summary judgment in favor of the Administrative Office. The core issue here, as conceded by Ms. Pollack, is whether Ms. Pollack has a valid constitutional right to travel claim. She does not. The District Court correctly found that Ms. Pollack's constitutional right to travel was not impeded by the geographic restriction contained in certain of the vacancy announcements that she applied for. It was not present in all of them, and she was able to apply for three jobs that she was considered for and not chosen. Ms. Pollack is free to travel to or from the District of Columbia, to visit the District of Columbia, or to take residency in the district or one of the states in the district commuting area. As Judge Tatel pointed out, the Court's finding that the Administrative Office's restriction did not make it more difficult for Ms. Pollack to travel to D.C. is, in fact, and was dispositive. If the Court doesn't have any questions, specific questions, on the constitutional right to travel, we believe that that is the correct finding. Why is Hicklin in opposite? Hicklin is in Article IV, Privileges and Immunities Clause case. It's the second category that was identified in Sands v. Roe, the right to visit the District of Columbia. I think that's an important distinction. Ms. Pollack does ground, largely ground, her claim in Article IV, because she argues this is such a fundamental right that it would be in the Constitution itself, or discussed at the time of the framing. Her claim here is that she wants to move to the district and become a resident to work for the Administrative Office of Courts. So that would be a distinction with the Hicklin Article IV category. And Hicklin also recognizes the second category in that there first has to be a fundamental right that bears on the vitality of the nation as a single entity, which is the language in Baldwin. And the judge, the district court below, correctly found that the right to travel to the district to seek employment does not implicate the vitality of the nation in the way that it is. But it's not just traveling to seek employment. It's traveling to seek employment with the federal government. That's correct. And Judge Ginsburg's point that cases, Supreme Court cases, have found that the Privileges and Immunities Clause or the right to travel has been applied to the federal government. And as Ms. Pollack concedes, there are none. The Fifth Circuit found in the Frazier v. Hebe case that the right to the Privileges and Immunities Clause was not, did not apply to the federal government. The Supreme Court did not reach the constitutional question in Frazier. It exercised its supervisory powers to reverse. Mr. Indrana, you overestimate me. I was asking a question, not making a point. I did not mean to. Let me ask you this. If the right to travel applies against the federal government, what is the standard by which we evaluate infringement or not? You would have to look at the nature of the, well, the first question would be, and we believe that's the case here, is that the right to travel was not implicated or impeded by the vacancy announcement. So in that case, even if the court were to find that in some cases it could be applied to the federal government, we would submit in the first instance that it's not. If it did apply to the federal government, you would likely be in the Hicklin category, where you go to the second and third prong of Hicklin, which would be a heightened scrutiny, strict scrutiny, to look at the basis, the peculiar evil posed by the nonresident, if that's the standard, and then whether it's narrowly tailored, the restriction is narrowly tailored to. So the AO would need more than a rational basis? If the court were to find that there is a, that the right to travel does apply to the federal government and that in this case that it was the AO restriction did impede Ms. Pollack's right to travel, then it would be in a heightened scrutiny. The district court denied it. Would you be able to meet that scrutiny? We have argued that we believe that we would in this case, that the administrative office first in advertising this position opened it in the first instance to a nationwide pool of applicants, those that work for the court system or the administrative office. And then in expanding it in certain cases to sort of expand the pool, it first looks at the D.C. commuting area and attorneys in that area. And what was the compelling reason for limiting the pool? Limiting the pool in the instance to the D.C. commuting area. The interest is – It was either step, but you ended up so you could – I guess that's the only one you really need to defend. In the first instance, the administrative office properly would find that there is a pool of talent and attorneys within the court system. No, no, no, but not within the court system. That's not – So the expansion to the D.C. commuting area is justified, and we've argued that it limits the administrative burden of processing a large number of applications, that in limiting it to the D.C. commuting area, there is a sufficient number of qualified applicants found that can be referred for consideration. You have, in addition to the court system and the expertise that court employees may have, you have in the D.C. commuting area a talent of attorneys, often that have experience with the legislative branch, working for Congress perhaps or the courts. Well, that's certainly true, but there may be some out there elsewhere in the real world, too. So the question is, what's the compelling reason for – by hypothesis at this point, we've got a fundamental right applicable to federal government and are in search of a compelling, by your own standard, compelling rationale, and it seems to be based on administrative burden. That is our argument. How many applications did you get or would you get? How much of a burden would it be to allow people from Kentucky to apply? In the appendix, we provided an appendix as part of our brief, and A.A. 20 and A.A. 21 discuss the five vacancies that Ms. Pollack applied for. So I can start with that. The first job she applied for was advertised in December 2009 to January 2010. Aren't we talking about something like the difference between 70 and 200 or something like that? Yes. So in the one that was limited to the D.C. commuting area, the referred applicants were 70. The two that were nationwide that had no restrictions were 159 and 399. So each got 900 or so applications for three or four clerkships every year. The administrative burden of sorting those out is not so great that we don't have time to do our work, nor is it, in fact, significant at all. Is your burden any greater? I think it's different for the court looking to hire clerks. You're looking for the merit principle in 5 U.S.C. 2301B1 that has been applied to the courts, which talks about recruitment from appropriate sources. So the court in hiring clerks traditionally may be looking at a nationwide pool of attorneys, recent graduates perhaps that have gone to law schools throughout the country, and that would be your pool. When the administrative office makes its cut, when it extends it to the D.C. commuting area, it doesn't further restrict except for the minimum qualifications for the job within that pool. So the court's sources may be different than what the administrative office is looking at. But that's self-imposed. I mean, that's because you've limited it to the metropolitan area. Correct, but what the administrative office is looking for is a sufficient number of qualified applicants from nationwide within the court. So you're not looking for the most qualified, just the minimally qualified? No. The finding is that the referred applicants are those that are minimally qualified, and within those referred applicants the administrative office finds that it has a sufficient number of qualified applicants, that it doesn't need to expand further than that. Now, it does in many cases go nationwide. I'm just trying to come down to the compelling rationale here, compelling government interest, is in not expending resources to evaluate more people because you don't think it will be productive of a better selection. And it would depend on the jobs. The administrative office is hiring within the fiscal year that we've discussed in the declaration. I believe there are 14 positions. So maybe two of those, they go nationwide. For the third one, not so broad, in that they may, in some instances, and we would intend that it's a rational basis analysis here. Wait a minute. What changed? What changed? Well, I take that back. The assumption we're arguing is that there is a fundamental right, which we don't agree with. The administrative office may need to hire somebody on short notice. They may want to look at a smaller pool if they think that there are enough qualified applicants within that pool to have a fair and open competition. One of the vacancies that was advertised in the fiscal year 2010 was limited to the administrative office only, and there were four applicants that were referred, but that was a highly technical position. So there's a difference depending on the nature of the job. It may be that they need to hire on short notice, that going through hundreds of applicants. But that's not the case here, correct? You've never advanced that as a rational basis? We have not, but we would on a rational basis. Thank you. Okay, thank you. How much time did Ms. Pollack have left? You can take a whole minute, Ms. Pollack. One, Baldwin said that paying more for a game permit was not. The Baldwin case said that paying more money for a hunting permit was not bearing on the vitality of the nation, but that not being able to apply for a job was. The Supreme Court specifically held that job applications, and for that matter legal ones, were fundamental rights. And in heave, the Supreme Court said that this geographic limitation was both irrational and arbitrary. As far as the number of jobs out there, that's a fact issue, and the judge granted summary judgment without either allowing me any discovery or even, for that matter, giving me notice so that I could try to submit information. Furthermore, in Sands v. Roe, the Supreme Court made clear that $10 million a year being saved by California was not a substantial interest. And on top of that, it said the fact that you can fix your money problem by discriminating against people from out of the area does not give you the constitutional right to do so. What do you think is your best authority for the proposition that federal government is covered by the Privilege and Immunities Clause? I think it's James Iredell. I'm sorry? I think it's the James Iredell statement. Nobody who's ever written an opinion that I can find that mentions the Privilege and Immunities Clause of Article IV has any basis for a statement about whether it does or it does not limit the federal government. They just say so. James Iredell was one of the people who was at the drafting convention. He was one of the head federalists in the fight to get the Constitution passed. Do you have any case authority? Excuse me? Do you have any case authority? We've had a lot of years that have passed since that statement was made. You don't have any case authority because, truthfully, the federal government as a whole doesn't think this is a sensible thing to do, so nobody's had to litigate it. Well, what about Article IV? I was surprised when I found no cases. What about the language of Article IV itself? It's all about the states. No, it doesn't limit itself to the states. It's about full faith. The clause doesn't say... Wait, wait, wait, wait. Sorry. Wait, Judge Tate will try to ask a question. I apologize, Your Honor. It's about full faith and credit. It's about extradition of felons to other states. You do slave laws. Admission of new states. Congressional power over territories. It's the only mention of Congress. Well, congressional power over territories isn't state. It's federal. And I think that Article IV is really the capital place. We don't have anywhere else to put it. We put it there. That's hardly a reason to ignore the language. What language in Article IV would you rely on? Judge Edwards asked you what case. Article IV says the citizens of each state shall be entitled to all privileges and duties of citizens in the several states. It doesn't say the state shan't trample on it. It doesn't say the federal government. You can see, don't you, that the amendment is articles all about the states and state power, right? I have yet. I don't know. I'm just looking at the language of the article. Forget the case law for a minute. I understand that, Your Honor. But this particular section, furthermore, the full faith and credit clause does mention Congress, as does the control of territories. But the article, Clause 2, Section 2, the Privileges and Immunities Clause, doesn't, carefully doesn't mention an actor. Yeah, okay. Anything else? I want to ask the government something about discovery. Okay. Thank you, Ms. Bach. Judge Edwards has a question for the government, I think, about discovery, right? Mm-hmm. Yeah. Go ahead. You can come back up. I'm sorry. I forgot. How can I square or make any sense out of the district court's disposition of the denial of discovery? There is case law in the circuit which strongly suggests, and I think as a matter of common sense it would be so, that you don't decide the summary judgment motion and then moot the discovery request. That makes no sense. And we have some cases that suggest that makes no sense. The district court mooted it out. If the district court had said it was frivolous, that is, in the court's view, it made no sense. So it doesn't matter. I'm doing it in the wrong order, but I see no merit to it. But the court just said it's moot now because I've decided against her. That makes no sense. Well, I would suggest a couple things. First, Ms. Pollitt, in her reply, does say she's never argued it's an abusive discretion for the district court to have denied that motion. So you're saying she's forfeited the claim of the challenge? I missed that one. Well, she does say in her reply it's not an abusive discretion, so there is a forfeiture. Well, I'll have to go back and look at that carefully. You're saying that she never raised it preliminarily? You're arguing now that it was forfeited? In her reply, I believe that argument. No, I understand. You're saying she didn't raise it until ‑‑ I don't know whether this is right or wrong. I want to make sure I understand what your answer is. You're saying she didn't raise it until her reply, so it's been forfeited? That's the first argument. Okay. Let's assume that's night right, and I don't know whether it's right or not. What's your answer on how could the district court simply moot out the discovery request? There's case law that ‑‑ and I've been involved in one of these cases. It does not make sense to do that? I believe that it's consistent with the court's decision in that finding that the vacancy announcement, the restriction did not violate a fundamental right to travel and that at best there's some ‑‑ So there's nothing to discuss? Right. That's essentially what you're saying. You're saying the district court was essentially saying there's nothing to discuss here, so I'm not going to give any discovery over because she can't get to it. Correct, because there's sufficient evidence by the government submissions for a rational basis analysis, and so there wasn't a need for discovery. Okay. Ms. Pollack, would you like a minute to respond to this? Yes, Your Honor. I won't do any more argument. I just want to clarify the procedure because the government is confusing it. There were two different discovery requests at issue. To tell you the truth, I lost my temper privately when the government kept pushing the case along, extending it, and never even giving me an answer. So I moved for procedurally early discovery. That is what I have never argued was an abuse of discretion. However, separately, and the discovery that I was denied is in my response to the original, to the government's motion to dismiss around the alternative summary judgment, I made what was then I think a 56F and is now a 56D suggestion, which I've included in my reply brief, stating that I hadn't had any discovery at all and that I hadn't even had a chance to look at the job announcements that the government was relying on and ask for discovery. Did you raise that in your blue brief? I think that's what the government was getting at. Did you raise that in your first brief to the court? In your opening brief in this court. In the opening brief, yes, I did mention the lack of discovery. I most certainly did. You mentioned it? Did you argue that that was a basis for reversal? I argued that that was incorrect, yes, Your Honor. And then in my reply brief, I clarify the procedural mistake that the government has just repeated. Okay. Thank you very much. Case submitted.
judges: Tatel, Edwards, Ginsburg